Wayne **DANIELS**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (TRISTATE TRANSPORT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 3, 1999.

Decided May 23, 2000.

As Amended June 1, 2000.

Kathy Kennedy, Philadelphia, for petitioner.

Lisa D. Eldridge, Philadelphia, for respondent.

Before DOYLE, President Judge, and COLINS, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

KELLEY, Judge.

Wayne Daniels (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) granting the petition of Tristate Transport (Employer) to terminate the disability benefits awarded to Claimant pursuant to the Workers' Compensation Act (Act).[1] We affirm.

On December 13, 1990, Claimant was involved in a motor vehicle accident while in the course and scope of his employment with Employer. As a result of the accident, Claimant suffered an injury to his lumbosacral spine and continuing low back pain with radiation into his lower left extremity. Subsequently, Claimant filed a claim petition for disability benefits based on the work-related injuries. On August 10, 1991, Claimant was awarded benefits for these injuries.[2]

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Specifically, the WCJ determined that Claimant suffered an injury to his lumbosacral spine in the nature of acute lumbosacral

On January 9, 1992, Employer filed a petition to terminate Claimant's benefits. In the petition Employer alleged that, as of November 7, 1991, Claimant's disability had ceased and that he was able to return to work without restriction. On February 19, 1992, Claimant filed an answer to Employer's petition denying all of the material allegations raised therein. Hearings before a WCJ ensued.

In support of the termination petition, Employer presented the deposition testimony of John T. Williams, M.D., a physician board certified in orthopedic surgery. In opposition to the termination petition, Claimant testified and presented the deposition testimony of Stephan Fabian, M.D., a family physician and Claimant's treating physician.

Dr. Williams testified that he examined Claimant on November 7, 1991. Dr. Williams discussed the numerous objective tests that he performed on Claimant during his physical examination and Claimant's responses thereto. Dr. Williams testified that Claimant's responses to the tests were inappropriate for the type of tests being performed. He stated that his physical examination of Claimant's back and lower extremities was within normal limits and revealed no positive objective findings that could correlate to Claimant's complaints of back pain and radiation into his extremities. Dr. Williams opined that, by history, Claimant sustained an acute lumbrosacral sprain/strain which had resolved. Dr. Williams further opined that Claimant was able to return to work without any restrictions.

Claimant testified that his low back and legs have bothered him since the accident. He also testified that he cannot perform the duties of his pre-injury position as an ambulance driver with Employer.

Dr. Fabian testified that he last examined Claimant on October 16, 1992 and Claimant complained of pain in his lumbar spine which intermittently radiated into his

strain and sprain with radiculopathy into both

right and left legs. Dr. Fabian opined that Claimant suffers from post-traumatic cervical and lumbar sprain with a protruding disc at the L–4–5 level which is causally related to the accident of December 13, 1990. Dr. Fabian further opined that Claimant is unable to return to the duties of his employment with Employer or any other employment at this time.

On March 10, 1997, the WCJ issued an order and decision disposing of Employer's termination petition in which she made the following relevant findings of fact:

5. John T. Williams, M.D. is board certified in orthopedic surgery. He evaluated Claimant on November 7, 1991. Claimant complained of pain in his back at L4–L5 to the right and in his stomach. Claimant's history included water pills, severe headaches, going to the bathroom at least ten times a night and spitting up blood. Claimant reported that he had an enlarged heart. He has a family history of diabetes. Dr. Williams did not review the x-rays, CAT Scan and nerve conduction test performed.

6. Dr. Williams opined that there were no positive objective findings upon examination. Dr. Williams opined Claimant had sustained an acute lumbosacral sprain and strain that had resolved. He further opined Claimant could resume his normal duties without restriction.

7. Dr. Fabian is Claimant's treating physician. He performed an examination on December 13, 1990 which revealed paraspinal muscle spasm in the paraspinal muscles of the cervical and lumbar region. He had limitation of flexion, extension and rotation of the lumbar spine with approximately fifty percent and somewhat less in the cervical spine, forty-five percent limitation of motion.

8. Dr. Fabian prescribed physical therapy four times a week with extreme restriction of Claimant's activities.

of his lower extremities.

Claimant improved substantially after the first four months, but he still had pain in his lumbar spine which would radiate into his right and left legs, particularly into the left. Physical therapy was reduced to two times per week. Claimant reached a plateau after eight or nine months of treatment. It is Dr. Fabian's opinion Claimant's limitation of his cervical and lumbar region was approximately twenty to twenty-five percent.

9. Dr. Fabian last saw Claimant on October 16, 1992. Claimant complained of pain in his lumbar spine, intermittently radiating into his right and left leg, particularly into his left. Claimant has substantial improvement of his cervical spine. It is Dr. Fabian's opinion claimant's limitation of cervical flexion, extension and rotation is approximately fifteen percent.

10. Dr. Fabian reviewed the CT Scan which shows a mild concentrically protruding disc at level L4–5. The EMG was normal.

11. It is Dr. Fabian's opinion that Claimant suffers from post traumatic cervical and lumbar sprain with a protruding lumbar disc at the level of L4–L5 which is causally related to Claimant's automobile accident of December 13, 1990. Claimant had no history of prior pain in the regions affected.

12. Dr. Fabian opined Claimant is unable to return to his duties as an ambulance driver or any other type of employment at this time. Claimant is still experiencing radicular pain which is exacerbated by physical activity. He has limitation of lumbar flexion, extension and rotation and to a lesser degree cervical problems that prohibit him from doing any type of active physical work. Claimant is unable to sit longer than fifteen or twenty minutes in one position. His ambulation is severely limited to approximately one to one and a half blocks.

13. Claimant testified he was a supervisor for the Employer. His duties consisted of picking up patients and making sure the ambulances had equipment. Claimant would lift tanks of oxygen weighing as much as 100 pounds.

14. Claimant testified he was in the ambulance when it was rear-ended on December 13, 1990. He sought treatment at Germantown Hospital where they took x-rays and gave him pain pills. He continued his treatment with Dr. Fabian. He receives physical therapy three times a week and sees Dr. Fabian once a week. Claimant takes Tylenol with Codeine for pain.

15. Claimant testified that his low back and legs have continued to bother him since the accident. He is only able to stand or sit for about an hour. It starts to hurt in his lower back if he walks. Claimant believes he is able to lift 20 pounds. Claimant does not believe he can perform his pre-injury employment. He does not believe he can perform any employment while he is on medication.

16. Based upon a review of the evidentiary record as a whole, this Judge finds the testimony of the Claimant is not credible or persuasive.

17. Based upon a review of the evidentiary record as a whole, this Judge finds the opinions of Dr. Williams to be more credible and persuasive than the opinions of Dr. Fabian. Accordingly, the opinions of Dr. Fabian are rejected wherever inconsistent with the opinions of Dr. Williams.

18. This Judge finds Claimant was fully recovered from his December 13, 1990 work injury as of November 7, 1991.

WCJ Decision, pp. 3–4.

Based on the foregoing, the WCJ determined that Employer had sustained its burden of establishing that Claimant was fully recovered from his work injury of December 13, 1990 as of November 7, 1991. *Id.* at p. 5. As a result, the WCJ issued an order granting Employer's peti-

tion to terminate Claimant's disability benefits. *Id.*

On March 27, 1997, Claimant appealed the WCJ's decision to the Board. On August 5, 1998, the Board issued an order affirming the WCJ's decision. Claimant then filed the instant appeal in this Court.[3]

In this appeal Claimant contends that the Board erred in affirming the WCJ's decision in that: (1) the WCJ's determination that he had fully recovered from his compensable work-related injury is not supported by substantial evidence; and (2) the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act.[4]

■ We initially note that an employer seeking to terminate a claimant's benefits must prove that the claimant's disability has ceased or that any existing injury is not the result of the work-related injury.

*Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.),* 651 A.2d 623 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of claimant's full recovery from the work-related injury. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.),* 141 Pa.Cmwlth. 253, 595 A.2d 697 (1991).

Claimant first contends that the Board erred in affirming the WCJ's decision because the WCJ's determination that he had fully recovered from his compensable work-related injury is not supported by substantial evidence. Claimant asserts that because it was determined that he suffered a compensable injury in the nature of an acute lumbosacral strain and sprain with radiculopathy into both his

---

3. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Company),* 541 Pa. 148, 661 A.2d 1355 (1995); *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995); *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992); *The Western Pennsylvania Hospital v. Workers' Compensation Appeal Board (Cassidy),* 725 A.2d 1282 (Pa.Cmwlth. 1999); *Roccuzzo v. Workers' Compensation Appeal Board (School District of Philadelphia),* 721 A.2d 1171 (Pa.Cmwlth.1998); *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa.Cmwlth. 1995). Where, as here, the Board takes no additional evidence, this Court reviews the record in its entirety in order to determine whether the WCJ's factual findings are supported by substantial evidence. *Ryan v. Workmen's Compensation Appeal Board (Community Health Services),* 550 Pa. 550, 707 A.2d 1130 (1998). "Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.; Bethenergy Mines, Inc.; Republic Steel Corporation v. Workmen's*

*Compensation Appeal Board (Shinsky),* 492 Pa. 1, 421 A.2d 1060 (1980).

4. Section 422(a) of the Act states:

Neither the Board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

lower extremities, Dr. Williams' testimony is insufficient as a matter of law to support the termination of benefits as it fails to address the lumbar radiculopathy. Claimant relies on our opinion in *Central Park Lodge v. Workers' Compensation Appeal Board (Robinson)*, 718 A.2d 368 (Pa. Cmwlth.1998) in support of this assertion.

In *Central Park Lodge*, the claimant sustained a work-related injury to her head, neck and back and was awarded benefits based on this injury. The employer subsequently filed a termination petition alleging that the claimant had fully recovered from her work-related injury. In support of the petition, the employer offered the deposition testimony of its medical expert who opined that the claimant had fully recovered from her injury. The WCJ accepted this testimony as credible and persuasive and granted the petition. On appeal to the Board, the WCJ's decision was reversed because the medical expert's testimony only addressed the claimant's neck and back injuries and failed to address her head injury. As a result, the Board determined that the medical expert's testimony was insufficient as a matter of law to support the termination of the claimant's benefits.

On appeal to this Court, the employer argued that the medical expert's testimony was sufficient to support a termination because although he never addressed the claimant's head injury, the claimant never complained of a head injury while being examined by him. In rejecting this claim we stated:

> In this case, it was conclusively established in the 1990 Claim Petition proceeding that Claimant was disabled due to work-related injuries to her neck, back, *and head*, with the head injuries involving a concussion and post-concussion syndrome. In order to terminate Claimant's benefits, Employer was required to prove that Claimant was completely recovered from *all* of these injuries, including the head injuries. Because Employer's medical expert ... completely failed to address Claimant's head injury, his testimony is insufficient as a matter of law. The WCJ's decision to terminate is therefore not supported by substantial evidence.

*Id.* at 370 (emphasis in original).

■ However, in this case Dr. Williams testified that he examined Claimant's back and both of the lower extremities, and he conducted tests relating to the purported pain that Claimant suffers in both his back and lower extremities. *See* N.T. 7/2/92 [5], pp. 12–20. In fact, in affirming the WCJ's decision granting a termination of Claimant's benefits, the Board quotes extensively from these portions of Dr. Williams' testimony. *See* Board Opinion, pp. 4–7. In short, Dr. Williams addressed all aspects of Claimant's compensable work-related injury in determining that he had fully recovered from this injury and was capable of resuming his normal work duties without any restrictions. Based on Dr. Williams' testimony, the WCJ determined that all disability relating to Claimant's work-related injury had ceased as of November 7, 1991. Contrary to Claimant's assertion and reliance on our opinion in *Central Park Lodge*, our review of the record in this case reveals that this finding is amply supported by substantial evidence.

Finally, Claimant contends that the Board erred in affirming the WCJ's decision because the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act. While Claimant does not dispute that the WCJ issued a detailed decision and summarized the evidence in this case, Claimant argues that the WCJ failed to explain why she accepted the testimony of Dr. Williams as credible, and

---

**5.** "N.T. 7/2/92" refers to the notes of Dr. Williams' deposition testimony of July 2, 1992.

why she rejected the conflicting testimony of Dr. Fabian as not credible. Claimant asserts that Section 422(a) of the Act, in conjunction with section 423(c) of the Act [6], authorizes this Court to review a WCJ's credibility determinations on appeal and to render a new decision based on the evidence in the certified record.[7]

6. Section 423(c) of the Act states:

> The board shall hear the appeal on the record certified by the workers' compensation judge's office. The board shall affirm the workers' compensation judge adjudication unless it shall find that the adjudication is not in compliance with section 422(a) and the other provisions of this act.

77 P.S. § 854.2.

7. In considering Claimant's allegation of error, it is important to recall that the workers' compensation scheme can best be understood as a replacement of common law tort actions between employees and employers as a means for obtaining compensation for injuries. *Markle*; *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). As the Pennsylvania Supreme Court has noted:

> [T]he Act is remedial social legislation, which substitutes a relatively quick and inexpensive scheme to provide certain compensation for lost earning, in place of the common law process under which any damages would be recoverable only after a suit against the appropriate parties, subject to available defenses and, of course, any expenses and delays inherent in the system. Under this scheme, employees are able to obtain compensation without regard to fault—either their own, that of a third party, or even the lack of fault on the part of the employer—while employers are subject to payment of benefits at a set rate, receive immunity from being otherwise subjected to liability for damages, and have a right of subrogation to the extent of compensation paid in the event a third party is held responsible for the injury . . . . .

*Hankee v. Wilkes–Barre/Scranton International Airport*, 532 Pa. 494, 500, 616 A.2d 614, 617 (1992) (footnote omitted). *See also Sporio v. Workmen's Compensation Appeal Board (Songer Construction)*, 553 Pa. 44, 53, 717 A.2d 525, 530 (1998) ("[T]he Act substitutes a quick and inexpensive scheme to provide compensation for work-related injuries in place of the common law process where the employee must sue the appropriate parties for damages. *See [Hankee]*. Employers pay benefits at a set rate and they are immune from common-law liability. *See id.*"); *Vescio v. Pennsylvania Electric Co.*, 336 Pa. 502, 505, 9 A.2d 546, 548–549 (1939) (" '[A]ll will agree that [the] primary and general purpose [of the Act] was to substitute a method of accident insurance in place of common-law rights and liabilities for substantially all employees, except such as are by express terms or necessary implication excluded from its operation.' ") (citation omitted); *Rudy v. McCloskey & Co.*, 152 Pa.Super. 101, 30 A.2d 805, 808 (1943), *aff'd*, 348 Pa. 401, 35 A.2d 250 (1944) ("[T]he title of the [Act] stamps it a purely compensation measure. Its purpose was to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer . . . 'Its purpose is to relieve to some extent the employee * * * from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect. . .' ") (citations omitted).

The legislative authority to enact such a statutory scheme may be found in Article 3, Section 18 of the Pennsylvania Constitution. *Hankee*; *Rudy*. As we have previously noted, Article 3, Section 18, "[e]mpowers the General Assembly, if it chooses, to enact laws to compensate for injuries or diseases, including those that cause the death of an employee, that arise out of their employment." *Antonucci v. Workmen's Compensation Appeal Board (U.S. Steel Corporation)*, 133 Pa. Cmwlth. 273, 576 A.2d 401, 404 (1990), *petition for allowance of appeal denied*, 527 Pa. 651, 593 A.2d 423 (1991).

Pursuant to Section 303 of the Act, 77 P.S. § 481, the Act provides the sole and exclusive remedy for an employee who seeks to recover for injuries sustained during the course of his employment. *Snyder v. Pocono Medical Center*, 440 Pa.Super. 606, 656 A.2d 534, *aff'd*, 547 Pa. 415, 690 A.2d 1152 (1997). As the Pennsylvania Supreme Court has noted, the exclusivity provision of the Act "[i]s a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action." *Kuney v. PMA Insurance Company*, 525 Pa. 171, 174, 578 A.2d 1285, 1286 (1990) (citation omitted). Because this statutory scheme provides an employee a remedy under its provisions, the exclusivity provisions of the Act have been deemed to comport with an employee's right

With regard to a WCJ's decision in a workers' compensation proceeding, as noted above, Section 422(a) of the Act provides, in pertinent part:

[A]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

In considering the requirements of this provision, we have recently stated:

As amended in 1996, [pursuant to the Act of June 24, 1996, P.L. 350 (Act 57),] Section 422(a) of the Act requires the

WCJ to issue a reasoned decision, which sets forth the rationale for the decision and the reasons for accepting the evidence relied upon. In addition, Section 422(a) now requires the WCJ, when faced with conflicting evidence, to "adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834 . . .

\* \* \*

However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously. [*Ryan* ] . . .

*PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088–1089 (Pa.Cmwlth. 1998). *See also Roccuzzo*, 721 A.2d at 1175 ("[W]e recognize that 'the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously.' [*PEC Contracting Engineers* ].").

∎ In addition, Section 418 of the Act provides, in pertinent part, that "[t]he

---

to a trial by jury or access to the courts as guaranteed by Article 1, Section 6 and Article 1, Section 11 of the Pennsylvania Constitution. *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983); *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980); *Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 99 A. 215 (1916); *Grant v. GAF Corporation*, 415 Pa.Super. 137, 608 A.2d 1047 (1992), *aff'd,* 536 Pa. 429, 639 A.2d 1170 (1994).

Pursuant to Section 418 of the Act, 77 P.S. § 833, the WCJ has the ultimate factfinding role in workers' compensation proceedings. *Arena v. Workmen's Compensation Appeal Board (Packaging Systems Corp.)*, 510 Pa. 34, 507 A.2d 18 (1986); *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979); *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa.Cmwlth. 1997); *Roadway Express, Inc. v. Workmen's*

*Compensation Appeal Board (Suveg)*, 54 Pa. Cmwlth. 169, 420 A.2d 774 (1980). In fact, the WCJ has been referred to as "the trial judge of the workers' compensation system". *Myers v. Department of Labor and Industry*, 312 Pa.Super. 61, 458 A.2d 235, 238 (1983). Thus, it has long been recognized that the findings of the factfinder in workers' compensation proceedings are as conclusive on appeal as the verdict of a jury, when supported by competent evidence. *Hudyck v. Wyoming Shovel Works*, 299 Pa. 182, 149 A. 312 (1930); *Krischunas v. Philadelphia & Reading Coal & Iron Company*, 296 Pa. 216, 145 A. 905 (1929); *Johnston v. Payne–Yost Construction Co.*, 292 Pa. 509, 141 A. 481 (1928); *Sgattone v. Mulholland & Gotwals, Inc.*, 290 Pa. 341, 138 A. 855 (1927); *State Workmen's Insurance Fund v. Young*, 2 Pa.Cmwlth. 423, 276 A.2d 552 (1971); *SKF Industries, Inc. v. Cody*, 2

findings of fact made by a[WCJ] to whom a petition has been assigned or any question of fact has been referred under the provisions of section four hundred and nineteen shall be final, unless an appeal is taken as provided in this act..." 77 P.S. § 833. Pursuant to Section 423(a) of the Act[8], the initial appeal of a WCJ's adjudication is lodged with the Board. *Fiorentino v. Workmen's Compensation Appeal Board (Concrete Industries, Inc.)*, 131 Pa. Cmwlth. 658, 571 A.2d 554 (1990); *Pittsburgh Moose Lodge #46 v. Workmen's Compensation Appeal Board (Grieco)*, 109 Pa.Cmwlth. 53, 530 A.2d 982 (1987); *Fritz v. Workmen's Compensation Appeal Board (Kim Manufacturing Co.)*, 107 Pa. Cmwlth. 168, 527 A.2d 636 (1987).

With regard to the Board's scope of review on appeal, we have recently noted that a prior version of Section 423 of the Act was also amended by Act 57 which deleted the prior version of Section 423, and added a new Section 423(c) now found at 77 P.S. § 854.2. *The Western Pennsylvania Hospital.* As we stated:

> [T]he now deleted Section 423 of the Act, 77 P.S. § 854, allowed the Board to hear evidence and substitute its findings if it had concluded that the WCJ's findings were not supported by competent evidence. Otherwise, the Board was to act as an appellate body. With the passage of Act 57, the prior Section 423 was deleted and replaced in part by a new Section 423(c). This new section deleted the language allowing the Board to take additional evidence, stating only that:
> > The board shall hear the appeal on the record certified by the workers' compensation judge's office. The board shall affirm the workers' compensation judge adjudication, unless it

Pa.Cmwlth. 19, 276 A.2d 356 (1971), *aff'd*, 447 Pa. 558, 291 A.2d 772 (1972).

**8.** Section 423(a) of the Act states, in pertinent part:

> Any party in interest may, within twenty days after notice of a workers' compensation judge's adjudication shall have been

shall find that the adjudication is not in compliance with section 422(a) and the other provisions of this act.

77 P.S. § 854.2.

*Id.*, 725 A.2d at 1283 (footnote omitted).

In this appeal Claimant contends that the amended Section 422(a) of the Act, in conjunction with the amended Section 423(c) of the Act, authorizes this Court to review a WCJ's credibility determinations on appeal and to render a new decision based on the evidence in the certified record. We do not agree.

As noted above, the amended Section 422(a) of the Act provides, in pertinent part, that "[a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached...", and "[t]he adjudication shall provide the basis for meaningful appellate review..." 77 P.S. § 834. To this end, the amended Section 422(a) requires a WCJ to set forth an adequate explanation of the reasons for rejecting or discrediting conflicting competent evidence, and to adequately explain the reasons for rejecting uncontroverted evidence. *Id.*

In addition, the amended Section 423 of the Act states, in pertinent part, that *"[t]he board* shall affirm the workers' compensation judge adjudication, unless *it* shall find that the adjudication is not in compliance with section 422(a) and the other provisions of this act..." 77 P.S. § 854.2 (emphasis added). Thus, these amended provisions specifically require

served upon him, take an appeal to the board on the ground: (1) that the adjudication is not in conformity with the terms of this act, or that the workers' compensation judge committed any other error of law; (2) that the findings of fact and adjudication was unwarranted by sufficient, competent evidence or was procured by fraud, coer-

*the Board*, while acting in *its* appellate capacity pursuant to Section 423 of the Act, to determine whether the WCJ made proper findings of fact, and whether the WCJ properly applied to law to these findings.[9]

However, the foregoing amendments to Sections 422(a) and 423 of the Act in no way affect this Court's appellate review of orders issued in workers' compensation proceedings. Section 763(a) of the Judicial Code, 42 Pa.C.S. § 763(a)[10], confers jurisdiction upon this Court to review the orders of the Board. *See Hallstead Foundry, Inc. v. Workmen's Compensation Appeal Board (Cudo)*, 115 Pa. Cmwlth. 379, 550 A.2d 812, 813 (1986), *rev'd on other grounds*, 517 Pa. 553, 539 A.2d 792 (1988) ("[C]laimant attempted to appeal the Board's decision to the Court of Common Pleas of Susquehanna County on September 26, 1980. The appeal was quashed, apparently because the Common

Pleas Court ruled, correctly so, that it did not have jurisdiction to take an appeal from the [Board]. *See* Section 763 of the Judicial Code, 42 Pa.C.S. § 763."); *County of Armstrong v. Workmen's Compensation Appeal Board (Ross)*, 81 Pa.Cmwlth. 474, 473 A.2d 755, 757 (1984) ("[T]he board was correct in asserting that, because its actions in workmen's compensation cases are reviewable directly by the Commonwealth Court, 42 Pa.C.S. § 763, the board must adhere to decisions of this court rather than those of the Superior Court where there is a divergence of opinion.").

As noted above, in conducting our appellate review of these orders, this Court's scope of review is limited by Section 704 of the Administrative Agency Law.[11] *Lehigh County Vo–Tech School; Markle; Bethenergy Mines, Inc.; The Western Pennsylvania Hospital; Roccuzzo; Greenwich Collieries.* In defining this scope of review,

---

cion or other improper conduct of any party in interest...
77 P.S. § 853.

9. The Board's detailed review of a WCJ's decision is entirely appropriate. Although Section 423 of the Act no longer authorizes the Board to hear evidence and substitute its findings for those of the WCJ, *The Western Pennsylvania Hospital*, while acting in its appellate capacity under this section, the Board continues to possess broad discretionary authority to correct factual or legal errors appearing in a WCJ's decision. *See, e.g.*, Sections 419, 424 and 425 of the Act, 77 P.S. §§ 852, 855, 856; *Joseph v. Workmen's Compensation Appeal Board (Delphi Company)*, 522 Pa. 154, 560 A.2d 755 (1989); *Borovich v. Colt Industries*, 492 Pa. 372, 424 A.2d 1237 (1981); *City of Philadelphia v. Workers' Compensation Appeal Board (Doherty)*, 716 A.2d 704 (Pa.Cmwlth. 1998); *Samuel J. Lansberry, Inc. v. Workmen's Compensation Appeal Board (Switzer)*, 168 Pa. Cmwlth. 64, 649 A.2d 162 (1994); *Trudnak v. Workmen's Compensation Appeal Board (Lucky Strike Coal Corp.)*, 157 Pa.Cmwlth. 212, 629 A.2d 254 (1993); *Carmen Paliotta General Construction v. Workmen's Compensation Appeal Board (Tribuzio)*, 107 Pa.Cmwlth. 143, 528 A.2d 274 (1987).

10. Section 736(a) of the Judicial Code states, in pertinent part:

(a) **General rule.**—Except as provided in subsection (c), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of government agencies in the following cases:
(1) All appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Board of Claims, the Environmental Hearing Board, the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other Commonwealth agency having Statewide jurisdiction...
42 Pa.C.S. § 763(a)(1).

11. Section 704 of the Administrative Agency Law provides, in pertinent part:

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence...
2 Pa.C.S. § 704.

the Pennsylvania Supreme Court has stated:

> The proper scope of inquiry is not whether upon a reweighing of all of the evidence, the decision reached by a[WCJ] appears to have been the most reasonable and probable one that could have been rendered. Rather, judicial review is limited to a determination of whether the record contains substantial evidence that supports the [WCJ]'s findings.

> The Administrative Agency Law, which governs appeals taken by persons aggrieved by agency adjudications, provides that a reviewing court shall affirm the adjudication unless it shall find that ... any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704. Clearly, the reviewing court is not directed to inquire into the reasonableness of the agency's adjudication, but rather to determine only whether it was supported by substantial evidence. See *McGovern's Estate v. State Employees' Retirement Board*, 512 Pa. 377, 382–83, 517 A.2d 523, 525 (1986) (standard of review applicable to agency adjudications is that set forth in 2 Pa.C.S. § 704 (substantial evidence)).

> In [*Republic Steel Corp.*, 492 Pa. at 5, 421 A.2d at 1062–63], we described the relevant standard:

> The standard of review of agency proceedings by appellate courts in this Commonwealth is the determination of whether there is substantial evidence to support the findings of the agency... Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion... Hence, appellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action. These principles have repeatedly been stated in another fashion: Review of the findings of fact is limited to the question of whether the lower court's findings are adequately supported by the evidence as a whole; credibility is solely an issue for the finder of fact; and findings of fact will be overturned only if they are arbitrary and capricious.

(Citations omitted). See also [*Arena*, 510 Pa. at 39, 507 A.2d at 21] (Board's adjudication must be affirmed if supported by substantial evidence).

*Bethenergy Mines, Inc.*, 531 Pa. at 291–292, 612 A.2d at 436–437.

▬ Thus, questions of credibility and the weight of the evidence are within the exclusive province of the WCJ who is free to accept or reject the testimony of any witness, in whole or in part. *Markle; Lehigh County Vo–Tech School; Bethenergy Mines, Inc.; Roccuzzo; Greenwich Collieries.* The appellate role is not to reweigh the evidence nor to review the credibility of the witnesses. *Lehigh County Vo–Tech School; Bethenergy Mines, Inc.; Republic Steel Corporation; Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth.1995). The WCJ's determinations regarding credibility and evidentiary weight are binding on appeal unless made arbitrarily or capriciously, i.e., they are not supported by substantial evidence. *Ryan; Markle; Lehigh County Vo–Tech School; Bethenergy Mines, Inc.; Republic Steel Corporation; Greenwich Collieries.*[12]

12. This judicial deference to the determinations of the WCJ is in accord with the basic tenet of administrative law that it is not the role of this Court to explore the mental processes of administrative officials. *See, e.g., Brady v. State Board of Chiropractic Examiners,* 79 Pa.Cmwlth. 608, 471 A.2d 572, *appeal dismissed,* 506 Pa. 83, 483 A.2d 1376 (1984); *Coder v. State Board of Chiropractic Examiners,* 79 Pa.Cmwlth. 567, 471 A.2d 563 (1984). As we have previously stated:

> "[O]ver the Government's objection the district court authorized the market agencies to take the deposition of the Secretary. The Secretary thereupon appeared in person at the trial. He was questioned at length re-

Likewise, with regard to whether the WCJ's decision "[p]rovide[s] the basis for meaningful appellate review..." pursuant to Section 422(a), we have previously noted that "[a] factfinder, under the Administrative Agency Law, is required to include findings necessary to resolve the issues raised by the evidence and relevant to the decision. *See* 2 Pa.C.S. § 507 [13]; *Scranton Garment Co. v. Workmen's Compensation Appeal Board,* [33 Pa.Cmwlth. 190, 381 A.2d 210 (1977)]." *Popowsky v. Pennsylvania Public Utility Commission,* 683 A.2d 958, 962 (Pa.Cmwlth.1996). *See also Birriel v. Workmen's Compensation Appeal Board,* 62 Pa.Cmwlth. 124, 435 A.2d 292, 293 (1981) ("['W]hen the fact finder in an administrative proceeding is required to set forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues raised by the evidence and which are relevant to a decision.'") (citation omitted).

■ However, in providing an adequate basis for appellate review, the WCJ is not required to address all of the evidence presented in a proceeding in her adjudication. Indeed, as this Court has previously noted:

> garding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situation, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. *But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding'. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary'. Just as a judge cannot be subjected to such a scruti-*

[U]nfortunately, for Petitioner her case is controlled by the provisions of Section 507 of Pennsylvania's Administrative Agency Law, 2 Pa.C.S. § 507, rather than federal law. And, it is clear that with respect to Pennsylvania's administrative agency proceedings the agency is not required to set forth findings specifically rejecting each and every allegation of a party. *Campbell v. Pennsylvania State Police,* [47 Pa.Cmwlth. 574, 408 A.2d 591 (1979)]; *Selan v. Unemployment Compensation Board of Review,* [52 Pa.Cmwlth. 7, 415 A.2d 139 (1980)], *affirmed per curiam,* 495 Pa. 338, 433 A.2d 1337 (1981). Thus, we find that although the [WCJ] did not explain specifically why she rejected certain testimony, her failure to do so was not fatal to the adjudication.

*Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries),* 128 Pa.Cmwlth. 1, 562 A.2d 950 (1989). *See also Bethenergy Mines, Inc.,* 531 Pa. at 293–294, 612 A.2d at 437 ("[T]he Administrative Agency Law provides that every agency adjudication 'shall contain findings and the reasons for the adjudication...' 2 Pa.C.S. § 507. Accordingly, both of the present [WCJs'] decisions set forth the

> *ny, so the integrity of the administrative process must be equally respected.* It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." (emphasis added.)

*Commonwealth v. Pennsylvania Public Utility Commission,* 17 Pa.Cmwlth. 351, 331 A.2d 598, 600–601 (1975) (quoting *United States v. Morgan,* 313 U.S. 409, 421–422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (citations omitted)).

**13.** Section 507 of the Administrative Agency Law provides:

> All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.
> 2 Pa.C.S. § 507.

reasons for their findings in a manner that was fully adequate to permit effective review. The [WCJs] expressly described the evidence upon which they relied, and, insofar as conflicting evidence was concerned, rested their decisions upon the credibility of the prevailing evidence. There is no deficiency in the adequacy of the [WCJs'] stated rationales. . .").

■■■ Thus, contrary to Claimant's assertion, it is patently beyond this Court's statutory scope of review to reject a WCJ's credibility determinations on appeal, and to make new findings of fact based on the evidence in the certified record. Rather, our review of the factual findings in this appeal is limited to determining whether or not they are supported by substantial evidence. Section 704 of the Administrative Agency Law; *Ryan; Lehigh County Vo–Tech School; Markle; Bethenergy Mines, Inc.; Republic Steel Corporation.*

■■■ Likewise, in order to provide a meaningful basis for appellate review, a WCJ's decision must contain findings and the reasons for the adjudication. Section 507 of the Administrative Agency Law. To this end, the WCJ must set forth the reasons for her findings, and she must include all of the findings necessary to resolve the issues that were raised by the evidence and which are relevant to her decision. *Bethenergy Mines, Inc.; Popowsky; Birriel.* Moreover, a WCJ's failure to explain specifically why she rejected certain testimony is not fatal to her adjudication and does not preclude effective appellate review. *Roth.*

In the instant case, in rejecting Claimant's assertion that the WCJ's decision violates the provisions of Section 422(a), the Board stated the following:

Claimant asserts that the WCJ failed to render a reasoned decision. The language of section 422(a) imposes a standard of "adequate explanation" upon WCJs. While not yet fully examined or settled by caselaw, if, in fact, the WCJ

provides a summary of the testimony and identification of credible witnesses, and if the WCJ shows the grounds relied upon by the medical expert, this constitutes adequate explanation for the rejection of otherwise competent evidence for the purposes of section 422(a).

Upon review of the WCJ's Decision in this matter, we believe that the requirements of section 422(a) have been met. As noted earlier, the WCJ summarized the testimony of Drs. Fabian and Williams, as well as the testimony of Claimant. The WCJ found Dr. Williams credible, while finding neither Claimant's nor Dr. Fabian's testimony credible or persuasive. As such, the WCJ provided an adequate explanation for her determination and ultimate denial of the Petition.

Because the WCJ's Decision is supported by substantial competent evidence, the WCJ made no error in granting [Employer]'s Termination Petition. . .

Board Opinion, pp. 8–9.

■■■ In this case, the Board properly determined that the certified record contains substantial evidence supporting the WCJ's findings of fact. In addition, the Board properly determined that the WCJ provided an adequate explanation for her determination by outlining all of the evidence considered, stating the credible evidence on which she relied, and setting forth the reasons for the ultimate grant of Employer's termination petition. As a result, the Board did not err in affirming the WCJ's decision. *See, e.g., Lambie v. Workers' Compensation Appeal Board (Curry Lumber Company),* 736 A.2d 67 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 747 A.2d 903 (No. 617 W.D. Allocatur Docket 1999, filed December 16, 1999); *Roccuzzo.*

Accordingly, the order of the Board is affirmed.[14]

14. To the extent that the opinions of this    Court in *Hahnemann University Hospital v.*

## O R D E R

AND NOW, this 23rd day of May, 2000, the order of the Workers' Compensation Appeal Board, dated August 12, 1998 at No. A97–1349, is affirmed.

FRIEDMAN, Judge, dissenting.

Because I agree with Wayne Daniels (Claimant) that the workers' compensation judge (WCJ) failed to issue a reasoned decision as required under section 422(a) of the Workers' Compensation Act[1] (Act), 77 P.S. § 834, I respectfully dissent.[2]

Section 422(a) of the Act, which addresses the WCJ's responsibility in deciding workers' compensation cases, was amended in 1993 to include a reasoned decision requirement. In 1996, the legislature again amended section 422(a), adding language which further detailed the components of a reasoned decision and required more meticulous decision-writing by WCJs. Section 422(a) of the Act, as amended in 1996, now provides:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies *and state the reasons for accepting it* in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added).

Here, Tristate Transport (Employer) offered medical testimony from John T. Williams, M.D. in support of its termination petition. In opposition to Employer's termination petition, Claimant testified on his own behalf and presented the deposition testimony of his treating physician, Stephen Fabian, M.D.[3] Faced with competent, conflicting testimony from Claimant and the two medical witnesses, the

---

*Workers' Compensation Appeal Board (Wallace),* 718 A.2d 391 (Pa.Cmwlth.1998) and *Andrews v. Workers' Compensation Appeal Board (C & C Compost),* 701 A.2d 1003 (Pa. Cmwlth.1997) conflict with the opinion in this case, they are expressly overruled.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.

2. Notwithstanding my dissent with respect to the reasoned decision issue, I agree with the majority that there is no merit to Claimant's argument, first made in his supplemental brief to this court, that section 422(a) of the Act, 77 P.S. § 834, in conjunction with section 423(c) of the Act, *added by* Act of June 24, 1996, P.L. 350, § 18, 77 P.S. § 854.2, authorizes this court to review a WCJ's credibility

determinations on appeal and to render a new decision based on the evidence in the certified record.

3. Claimant argues that, because Dr. Fabian was Claimant's treating physician, the WCJ should have given greater credence to Dr. Fabian's testimony than to the testimony of Dr. Williams, who examined Claimant only for the purpose of offering testimony. Although I agree with Claimant that the WCJ's decision fails to comply with section 422(a) of the Act, I stress that I do not agree with Claimant's contention that the WCJ must give greater credence to a treating physician's testimony. *See Ashe v. Workmen's Compensation Appeal Board (Department of Labor and Industry),* 167 Pa.Cmwlth. 624, 648 A.2d 1306 (1994).

WCJ summarized the evidence and then simply stated:

16. Based upon a review of the evidentiary record as a whole, this [WCJ] finds the testimony of the Claimant is not credible or persuasive.

17. Based upon a review of the evidentiary record as a whole, this [WCJ] finds the opinions of Dr. Williams to be more credible and persuasive than the opinions of Dr. Fabian. Accordingly, the opinions of Dr. Fabian are rejected wherever inconsistent with the opinions of Dr. Williams.

(WCJ's Findings of Fact, Nos. 16–17.)

On this basis, the WCJ concluded that Employer sustained its burden of proving that Claimant was fully recovered from his work injury as of November 7, 1991 and granted Employer's termination petition. However, it is clear to me that, in her findings regarding credibility and evidentiary weight, the WCJ made no attempt to explain, much less to adequately explain, her reasons for rejecting or discrediting

competent evidence, as currently required under section 422(a) of the Act. I cannot agree with the WCAB's conclusion, accepted by the majority, that simply summarizing the evidence and making credibility determinations, without providing an explanation as to why competent evidence was rejected, satisfies the requirements of a reasoned decision, (majority op. at 305), and I believe that, in so concluding, the majority renders the 1996 amendments to section 422(a) of the Act meaningless.[4]

I recognize that the 1996 amendments to the Act have not diminished the WCJ's authority over questions of credibility and evidentiary weight, *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086 (Pa. Cmwlth.1998); however, while WCJs remain free to decide such questions, the 1996 amendments to the Act require that WCJs do more than merely summarize evidence and make credibility determinations in order to satisfy the statutory criteria for a reasoned decision.[5] When faced

4. Indeed, as support for its position that the WCJ need not explain specifically why she rejected certain testimony, the majority cites *Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries)*, 128 Pa. Cmwlth. 1, 562 A.2d 950 (1989), a decision issued prior even to the 1993 amendments to the Act. Instead, I would rely on *Hahnemann University Hospital v. Workers' Compensation Appeal Board (Wallace)*, 718 A.2d 391 (Pa. Cmwlth.1998), in which this court considered the effect of the 1996 amendments on a WCJ's decision–writing responsibilities. In *Hahnemann,* we acknowledged that in cases decided prior to the 1996 amendments, this court interpreted section 422(a) as not requiring a WCJ to set forth in detail the process by which he or she arrived at a determination. The WCJ needed only to state his or her determination in a clear and concise manner. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.),* 666 A.2d 383 (Pa. Cmwlth.1995). We noted that, prior to the 1996 amendments, we considered a decision to be "reasoned" if it simply summarized the testimony found credible by the WCJ because section 422(a) contained no requirement that WCJs explain why they accepted the testimony of one witness over another. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa.Cmwlth.

1995). However, we determined that, through the language added in the 1996 amendments, which specifically mandated inclusion of such an explanation, the legislature evidenced an intent to require a WCJ to do more than merely summarize evidence and make credibility determinations in order to satisfy the statutory criteria for a reasoned decision. We held that, now, the WCJ must state his or her reasons for accepting that evidence and must adequately explain why he or she rejected or discredited competent conflicting evidence. *Hahnemann.*

5. Employer disagrees and contends that the WCJ's credibility determinations here fully satisfied the reasoned decision requirement, citing *Cooper Power Systems v. Workers' Compensation Appeal Board (McFarland),* 722 A.2d 746 (Pa.Cmwlth.1998), for the proposition that "a finding of one party's evidence on a particular issue to be credible is a sufficient reason for rejecting an opposing party's contrary evidence on that particular issue." (Employer's supplemental brief at 5.) However, I disagree with Employer's interpretation of *Cooper Power.* In fact, in that case, we cite to *Hahnemann* and state, "[o]nce a WCJ determines witness credibility and makes factual findings that are supported by substantial evidence, *the only remaining requirement is to*

with conflicting, competent evidence, WCJs also must adequately explain the reasons why they rejected or discredited competent evidence.[6] 77 P.S. § 834; *Hahnemann University Hospital v. Workers' Compensation Appeal Board (Wallace)*, 718 A.2d 391 (Pa.Cmwlth.1998).

In its brief, Employer points out that, in fourteen of eighteen findings, the WCJ summarized and cited to telling portions of the record, before stating that she believed Dr. Williams and disbelieved Dr. Fabian and Claimant. According to Employer, this constitutes a "reasoned decision" because *"[i]t is not hard to imagine how the WCJ reached her conclusions."*[7] (Employer's brief at 13.) Apparently, the majority agrees, (*see* majority op. at 300); however, this statement by Employer ex-

actly illustrates my point. Although unrecognized by the majority, the 1996 amendments have cleared any doubt as to the legislature's intent to prevent the parties from having to "imagine" why certain credibility determinations were made. Thus, through its enactment of the 1996 amendments, the legislature has expressed its dissatisfaction, both with accepted practice prior to the reasoned decision requirement, *see e.g., Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries)*, 128 Pa.Cmwlth. 1, 562 A.2d 950 (1989), and with the judicial interpretation of the 1993 reasoned decision provision, which left the WCJ's decision-writing responsibilities largely unaffected. *See e.g., Greenwich Collieries v. Workmen's Compensation Appeal Board*

---

adequately explain how the credibility determinations were reached." *Cooper Power*, 722 A.2d at 749 (emphasis added). Employer also relies on *Serrano v. Workers' Compensation Appeal Board (Chain Bike Corp.)*, 718 A.2d 885 (Pa.Cmwlth.1998), to argue that a WCJ need not explain the basis for credibility and weight determinations. However, because *Serrano* rests solely on cases which did not consider the 1996 amendments to section 422(a) of the Act, it is not relevant here.

6. In *PEC Contracting*, this court considered whether a WCJ complied with section 422(a) of the Act by adequately explaining his reasons for rejecting competent medical testimony. We held that the reasoned decision requirement was satisfied where the WCJ's decision reflected that he reviewed the evidence of record and explained that he based his credibility determination on one doctor's greater familiarity and length of experience with the claimant. Similarly, in *Cooper Power*, we held that the WCJ's decision complied with the requirement of section 422(a) of the Act, to adequately explain how credibility determinations were reached, where the WCJ explained that she discredited a doctor's medical report because it was internally inconsistent and conclusory. In *Lambie v. Workers' Compensation Appeal Board (Curry Lumber Co.)*, 736 A.2d 67 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 747 A.2d 903 (1999), we determined that the WCJ complied with section 422(a) where the WCJ summarized pertinent testimony, explained why he rejected the testimony of certain witnesses and explained the rationale for his decision. In contrast to the explanations of-

fered by the WCJs in *PEC Contracting, Cooper Power* and *Lambie*, the WCJ here made no effort to explain her credibility determinations by informing the parties why she accepted one medical witness over the other. In fact, the credibility determinations here bear a striking resemblance to those rejected in *Hahnemann*, which stated as follows:

> 5. The [WCJ] has reviewed all of the evidence presented in this case. The [WCJ] finds the Claimant to be a credible witness.
> 6. The [WCJ] finds the testimony and opinions of Claimant's medical witnesses, Dr. Ruth and Dr. Fisher to. be more credible and persuasive than the testimony and opinions of [Employer's] medical witness, Dr. Murray Glickman.

*Id.* at 396. We concluded that these findings clearly failed to comport with the reasoned decision requirements expressly set forth by the legislature in the 1996 amendments to the Act.

7. Employer then goes on to speculate as to the likely reasons behind the WCJ's credibility determinations. I note that the reasons provided by Employer are all sound, and, *if* the WCJ had offered them to explain her credibility determinations, this certainly would have been a reasoned decision. However, in truth, the WCJ's decision is bereft of any factual or legal analysis revealing the inferences and deductions she made in determining that Employer satisfied its burden of proof on the termination petition. Without such analysis, we are left to guess at the WCJ's rationale, and, thus, we are unable to engage in meaningful appellate review.

(Buck), 664 A.2d 703 (Pa.Cmwlth.1995); Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.), 666 A.2d 383 (Pa.Cmwlth.1995). It is now time to give meaning to the legislature's plain language and expressed intent.

For the reasons stated, I believe that the WCJ here ignored the mandate of section 422(a) and, thus, the WCAB erred when it determined that the WCJ provided a reasoned decision in compliance with that section. Accordingly, I would remand this matter to the WCAB to remand to the WCJ for a reasoned decision providing an adequate explanation of the reasons for rejecting or discrediting competent testimony.[8]

Judge PELLEGRINI joins in this dissent.

---

8. Because I do not believe that a reasoned decision has been presented for our review, I would not address Claimant's other argument, i.e., that the WCJ's decision is not supported by substantial competent evidence. Where, as here, meaningful appellate review is precluded absent a reasoned decision by the WCJ, the proper inquiry is not whether substantial evidence supporting the result can be found within the record; rather, the case must be remanded with instructions that the WCJ issue an amended decision enabling us to perform our appellate role. Hahnemann.